UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JOHN NUNNALLY,

          Plaintiff,            Case No. 2:19-cv-38

v.                                     Honorable Paul L. Maloney

R. BENSON et al.,

          Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's due process claims against all Defendants.

## Discussion

I.     Factual Allegations

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan.

The events about which he complains occurred at that facility. Plaintiff sues URF Correctional Officers R. Benson and (unknown) Olmstead and URF Captain (unknown) Burke.

Plaintiff alleges that he was transferred back to URF on June 22, 2018. His typewriter was withheld by Correctional Officer Bawks (not a Defendant) for several days before it was released to Plaintiff.

On September 3, 2018, Plaintiff sent a kite to the URF warden, complaining that Defendants Benson and Olmstead were engaging in racially discriminatory actions, treating black prisoners differently than white prisoners, imposing harsher penalties on black prisoners, and refusing to allow the television to be turned to the Black Entertainment channel. (ECF No. 1-1, PageID.20.) A few days later, on September 12, 2018, Defendant Benson took Plaintiff's typewriter and papers from the dayroom table while Plaintiff was washing his hands. Defendant Olmstead assisted Benson to place the typewriter in the prisoner counselor's office. When Plaintiff asked Benson why he was taking the property, Benson responded that it was abandoned property. Benson then told Plaintiff that he knew the typewriter belonged to Plaintiff, and Plaintiff's typewriter was returned to him a few hours later. Plaintiff filed a grievance about the actions of Defendants Benson and Olmstead, saying they were arbitrary and capricious.

On September 18, 2018, Officer Dewitt wrote a Class-II misconduct against Plaintiff, citing a violation of a posted rule. Defendant Olmstead heard the misconduct charge, but refused to hear evidence from Plaintiff. Olmstead then found Plaintiff guilty of the misconduct charge and assigned him eight hours of extra duty. Defendant Olmstead had Defendant Benson type up the misconduct findings. On September 20, 2018, Plaintiff wrote Deputy Warden Batho and (unknown) Corrigan, complaining about the actions of Defendants Benson and Olmstead. The misconduct ticket was overturned on October 1, 2018. During the next couple of days, Sergeant

Bennett and Defendant Burke separately spoke with Defendants Benson and Olmstead. On October 5, 2018, Defendant Benson ordered Plaintiff to bring his typewriter to the office. When Plaintiff complied, Benson said, "Place the typewriter on the chair and leave. "It's mine now!" (Compl., ECF No. 1, PageID.6.) Plaintiff saw Benson carry the typewriter to the eastside of the facility. Plaintiff grieved the taking of his typewriter and the ostensible violations of policy. Defendant Benson issued a notice of intent (NOI) to find the typewriter to be contraband, stating that the typewriter had a clearly altered identification number, in violation of the rules.

Plaintiff contends that his typewriter was taken in retaliation for his September 18 and 20, 2018, letters. In support of that assertion, Plaintiff alleges that two prisoners overheard the following conversation between Defendants Olmstead and Benson:

> "Nunnally had to know that complaining to the Warden wouldn't do anything but cause him more problems." [. . .]
>
> DEFENDANT BENSON; responded: "Maybe he is that stupid, because now I am taking his typewriter and anything else I want."

(*Id.*, PageID.7.)

Subsequently, on October 6, 2018, Olmstead said to Defendant Benson, "I see Captain Burke is on board with us." (*Id.*) Defendant Benson replied, "I talked to him and he agreed to support the NOI that I wrote, so the typewriter is gone." (*Id.*)

Plaintiff claims that Defendants Benson, Olmstead, and Burke retaliated against him and conspired to retaliate against him for sending complaints to the warden and deputy warden. He also claims that he was deprived of his property without due process and that he was deprived of due process in the misconduct hearing.

Plaintiff seeks declaratory and permanent injunctive relief, together with compensatory and punitive damages.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

4

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff alleges that he was deprived of due process in two matters. First, he contends that Defendants deprived him of due process in the confiscation of his typewriter and the hearing on that confiscation. Second, he argues that Defendants violated his right to due process when they charged him with a misconduct for abandoning his property, failed to follow policy by deciding the matter too soon, and declined to consider his evidence in defense.

Plaintiff's first due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies

5

are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's claim based on the confiscation of his typewriter will be dismissed.

Plaintiff's second due process claim concerns the procedures followed in the Class-III misconduct proceeding. Under MDOC policy, prisoner misconduct charges fall into three classes. Class-I misconduct charges are considered major misconduct charges. Class-II and Class-III misconduct charges are both considered minor misconducts. *See* Mich. Dep't of Corr. Policy Directive 03.03.105 ¶ B.

To the extent that Plaintiff asserts that he was deprived of due process because of a violation of prison procedures, Plaintiff fails to state a claim. Defendants' alleged failures to comply with a state administrative rule or policy do not rise to the level of constitutional violations. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1

(6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, a Michigan prisoner's conviction on a minor misconduct charge does not implicate the due process clause. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Because the Class-III misconduct charge did not implicate a liberty interest, Plaintiff was not entitled to due process in the misconduct proceeding.

In sum, because Plaintiff has failed to state a due process claim, the Court will dismiss those claims with prejudice. Upon review, the Court concludes that Plaintiff has alleged sufficient facts to state a First Amendment retaliation claim.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court will dismiss, for failure to state a claim, Plaintiff's claims alleging a denial of due process. Plaintiff's retaliation claims against Defendants Benson, Olmstead, and Burke remain in the case.

An order consistent with this opinion will be entered.


Dated: February 22, 2019 /s/ Paul L. Maloney
Paul L. Maloney
United States District Judge